Karen L. MANK as plan administrator for the HANNAFORD HEALTH PLAN, Plaintiff

v.

Ellen GREEN, Lloyd Green, Jack Simmons, and Berman & Simmons, P.A., Defendants

No. CIV.03–42–P–C.

United States District Court, D. Maine.

Dec. 21, 2003.

---

Seth W. Brewster, Gregg H. Ginn, Verrill & Dana, Portland, ME, for Karen L. Mank, Plaintiff.

Julian L. Sweet, Berman & Simmons, P.A., Lewiston, MA, Peter J. Rubin, Daniel J. Mitchell, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Ellen Green, Jack H. Simmons, Berman & Simmons, PA, Lloyd Green, Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

GENE CARTER, Senior District Judge.

Plaintiff brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts I, II, III), federal common law (Counts IV, V, VI, VII), and state common law (Counts VIII, IX, X, XI) against Defendants Ellen Green, Lloyd Green, and their attorneys, Jack H. Simmons and the firm of Berman & Simmons, P.A. *See* Amended Complaint (Docket Item No. 64). Plaintiff has now filed an "Emergency Motion for Preliminary Injunction"[1] (Docket Item No. 40) on Counts I and II, requesting that Defendants Ellen Green and Lloyd Green be enjoined from withdrawing, transferring, or removing any of the settlement funds in their possession, custody, or control. That motion has now been fully briefed, and an evidentiary hearing was held on the issues of: (1) what identifiable proceeds remain from all amounts paid to Ellen Green in settlement of her claims arising out of the accident that occurred on June 18, 2001, and (2) the location of any such identifiable proceeds. The Court concludes that there remain $83,941.21 in identifiable proceeds from the settlement in the possession of the Defendants Ellen Green and Lloyd Green in three accounts at Peoples Bank and will enjoin the removal of all of the funds in the Greens' Peoples Bank CD account, will enjoin the removal of all of the funds in the

---

1. The Court notes that although Plaintiff's motion was entitled "emergency," curiously she did not request a temporary restraining order when this case was originally filed in February 2003 nor did she ask for an expedited briefing schedule on this motion when it was filed on November 5, 2003.

Greens' Peoples Bank savings account, and will enjoin the removal of any more than $8,964.00 from the Greens' Peoples Heritage checking account such that a balance of $12,431.01 must remain in that account.

## I. FACTS

Plaintiff Karen L. Mank ("Plaintiff") is the Vice President, Compensation and Associate Wellness, for Hannaford Bros. Co. (the "Company"), a Maine corporation with its principal place of business in Scarborough, Maine. To provide health benefits to its employees, the Company has established the Hannaford Health Plan ("the Plan"), an "employee welfare benefit plan" within the meaning of ERISA, which is funded by The Hannaford Bros. Co. Tax Exempt Employee Benefits Trust. The Company has appointed Plaintiff as the Plan Administrator of the Plan, and accordingly, she is a named fiduciary of the Plan within the meaning of ERISA.

Defendant Ellen Green is an employee of the Company, and she has participated in the Plan. Under the terms of the Plan, Mrs. Green is a "Covered Person." On June 18, 2001, Mrs. Green was involved in an accident in which a vehicle struck her while she was walking (the "accident"). She suffered injuries requiring medical care, and she incurred significant medical expenses arising from those injuries. In accordance with the terms of the Plan, the Plan paid medical benefits totaling $141,335.75 on her behalf for her injuries arising from the accident. The Plan includes a provision entitled "Right of Recovery or Reimbursement." Hannaford Health Plan at H46, attached as Ex. B to the Affidavit of Peter Rubin.

Mrs. Green retained Attorney Simmons and Berman & Simmons to represent her in a legal action seeking recovery in connection with the accident. On July 31, 2001, the Plan provided, and Mrs. Green

completed and signed, a request for information relating to certain medical claims for injuries in the accident. Specifically, Mrs. Green agreed as follows:

I/We am/are aware of the right of recovery provision contained in the Plan. I/We express my/our agreement to be bound by the provision. I/We understand, however, that my/our failure to express such agreement shall in no way affect the rights of the Company under the provision. I/We further agree that I/We shall not do anything to prejudice the rights of the Company in this matter.

Amended Complaint Ex. A. On the July 31, 2001, document, Mrs. Green also described the accident and provided the name and address of Attorney Simmons. On October 3, 2001, Mrs. Green completed and signed another request for information relating to medical claims for injuries in the accident and acknowledged that she was bound by the Plan's "right of recovery provision." Amended Complaint Ex. B.

In January 2002, on behalf of Green, Attorney Simmons and Berman & Simmons settled Green's legal claims arising from the accident. This settlement was in the amount of $300,000, which included Mrs. Green's damages and medical expenses. Attorney Simmons and Berman & Simmons distributed settlement proceeds to Green and to themselves as attorneys' fees and expenses. Mrs. Green, Attorney Simmons, and Berman & Simmons never made any payment to the Plan. Starting in the spring of 2002, the Plan made efforts to recover from Mrs. Green the monies it paid as a result of her medical expenses. Plaintiff subsequently filed this action in February 2003.

## II. DISCUSSION

### A. Legal Standard

█ In order to obtain a preliminary injunction, four factors must be met. A

party seeking an injunction must show that: (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) it has exhibited a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of an injunction. *See TEC Eng'g Corp. v. Budget Molders Supply,* 82 F.3d 542, 544 (1st Cir.1996); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

### 1. Likelihood of Success on the Merits

 The First Circuit has described likelihood of success as "the touchstone of the preliminary injunction inquiry." *Philip Morris v. Harshbarger,* 159 F.3d 670, 674 (1st Cir.1998). Plaintiff contends that ERISA section 502(a)(3)(B) authorizes the Plan to bring actions to enforce plan terms and to redress violations of ERISA and the terms of the Plan. *See* 29 U.S.C. § 1132(a)(3)(B). Specifically, Plaintiff asserts that the Plan's right of recovery provisions require that participants repay the Plan amounts they receive from third parties, and Plaintiff seeks to recover the amount expended on Mrs. Green's medical expenses by the Plan. Relying on *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), Defendants contend that the Plan is seeking legal, rather than equitable, relief and that this type of legal relief is unavailable pursuant to section 502(a)(3).

Section 502(a)(3) of ERISA provides that a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress its violations or (ii) to enforce any provisions of this sub-chapter or the terms of the plan. *See* 29 U.S.C. § 1132(a)(3). Thus, section 502(a)(3)(B) authorizes the Plan to bring actions to enjoin acts or practices that violate either the Plan's terms or ERISA itself and to redress violations of ERISA or the terms of the Plan by seeking equitable relief *See* 29 U.S.C. § 1132(a)(3)(B).

In *Knudson,* the Supreme Court held that an ERISA-covered plan may enforce a reimbursement provision where, as here, the monies are identifiable and in a defendant's possession. In that case, plaintiff Great–West had asked the Supreme Court to recognize the rights of ERISA plans and their fiduciaries to file suit in federal court to enforce reimbursement provisions, which the Court did, so long as the monies over which the plan fiduciary seeks restitution or constructive trust are being held by a defendant in the federal court lawsuit:

> [Historically], plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. [citations omitted]. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra,* 215, Comment a, at 867. Thus for restitution to lie in equity, the action generally must seek not to impose personal liabili-

ty on the defendant, but to restore to the possession particular funds or property in the defendant's possession.

*Knudson,* 534 U.S. at 213–14, 122 S.Ct. at 714–15. The Court affirmed the dismissal of the lawsuit in *Knudson,* not on the basis that ERISA does not recognize such suits but, rather, on the basis that the plan beneficiary in that case was not properly subject to a claim for reimbursement because she was not in possession of the monies recovered in the state court action against the third party that caused her injuries. *See id.,* 122 S.Ct. at 715. Instead, the monies at issue in *Knudson* had been transferred on her behalf directly from the auto manufacturer to a trust established under state law for her future needs and to her attorney as payment of his fee. *Id.*

Since *Knudson,* courts have recognized claims for equitable relief under the reimbursement/subrogation provisions of ERISA plans, albeit within the parameters for such claims set forth in *Knudson. See Great–West Life & Annuity Ins. Co. v. Brown,* 192 F.Supp.2d 1376 (M.D.Ga.2002); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot, and Wansbrough, P.C.,* 2003 WL 282443, 2003 U.S. Dist. LEXIS 1643 (N.D.Tex. Feb. 14, 2003); *Bauer v. Gylten,* 2002 WL 664034, 2002 U.S. Dist. LEXIS 7246 (D.N.D. Apr. 22, 2002); *Administrative Committee v. Varco,* 2002 WL 47159, 2002 U.S. Dist. LEXIS 530 (N.D. Ill. Jan 14, 2002). Further, courts have granted extraordinary relief in the form of temporary restraining orders and preliminary injunctions to prevent recoveries from third parties from being dissipated while federal law suits between ERISA plans and their beneficiaries proceed. *See, e.g., Wellmark v. Deguara,* 257 F.Supp.2d 1209, 1211 (S.D.Iowa 2003).

Plaintiff alleges that the Plan is entitled to recover the amounts paid for Green's medical expenses in the event that she recovered monies from a third party. At the time of the accident, the Plan's right of recovery provision read, in relevant part:

A Covered Person who recovers payment from a third party shall reimburse the Plan for the amount of benefit payments made, in full and without reduction for attorneys' fees or costs, from the proceeds received from the third party, whether the proceeds are paid by way of settlement, judgment, or otherwise, and the Plan shall have an equitable interest in the amount recovered, or to be recovered, for the amount of benefit payments made. The Plan shall have the right to withhold future benefit payments to which a claimant or a Covered Person through whom the claimant derives his or her claim may be entitled until the obligation to the Plan under the foregoing provisions of this Section, plus interest, has been satisfied. This right to offset shall not limit the right of the Plan to recover an erroneous or excess payment in any other manner, and the Plan shall equally have the right to institute legal action against a Covered Person for failure to reimburse the Plan or to honor its equitable interest in the amount recovered from a third party, and the Covered Person shall be liable in such event for all costs of collection, including reasonable attorneys' fees. For purposes of this Section, the "amount of benefit payments made" shall include in appropriate cases the reasonable cash value of any benefits provided in the form of services.

Hannaford Health Plan at H42, attached as Ex. B to the Affidavit of Peter Rubin (Docket Item No. 55). The Court concludes that the Plan is seeking equitable relief in the form of equitable restitution

pursuant to the Plan's right-of-recovery provision.

■ As a threshold to her succeeding in her claim for equitable relief, however, Plaintiff must show the existence of identifiable proceeds from a third-party recovery, as well as demonstrate that such identifiable proceeds are in a defendant's possession. Defendants contend that the Plan is unable to trace identifiable proceeds in the possession of Mrs. Green. However, the Court has held an evidentiary hearing and finds that the evidence establishes that $83,141.21 of identifiable proceeds remain in the Greens' possession.[2] Unlike *Knudson*, here, the identifiable proceeds are held in accounts in the name of Ellen Green or jointly in the names of Ellen and Lloyd Green. As both are named Defendants in this action, they are subject to Plaintiff's equitable claim for recovery of amounts the Plan has paid in consideration of Ellen Green's injuries.

■ Defendants also argue that the Court should disregard a portion of the settlement in its analysis of what, if any, identifiable proceeds remain. Relying on language in the "Subrogation" provision of the Summary Plan Description ("SPD"), Defendants contend that the portion of the settlement attributable to Mrs. Green's uninsured/underinsured motorist ("UM") coverage ($100,000) is not within the scope of recoverable payments under the reimbursement provision of the policy.[3] Specifically, Defendants contend that the SPD

that was in effect at the time the Greens settled their claims provided:

**SUBROGATION**

A Covered Person ... must notify the Plan Administrator before any benefits are paid under the Plan if there are potential claims against other parties that may be responsible for causing the expense or loss for which benefits may be paid under the Plan. For example, if a Covered Person is involved in a car accident caused by another person's negligence, the Covered Person must notify the Plan Administrator of the potential claim against the other party before any benefits under the Plan are paid.

A Covered Person must also provide proof to the Plan Administrator that claims, causes of action, and other rights against third parties will not be discharged or released without the Plan Administrator's prior written consent. If requested by the Plan Administrator, a Covered Person must assign to the Plan Administrator all rights, claims, interests and causes of action that any Covered Person has against any third party associated with the claim.

By accepting benefits under the Plan, a Covered Person authorizes the Plan to sue, compromise, or settle, in the Covered Person's name or otherwise, any rights, interests, claims or causes of action against any third party.....

---

**2.** This amount is determined by subtracting $8,964—the amount that Ellen Green deposited in her Peoples Bank checking account since the settlement from funds unrelated to the settlement—from the total amount remaining in the three Peoples Bank accounts at issue—$92,905.21.

**3.** The Defendants also argue that the amount that represents Lloyd Green's loss of consortium claim cannot be recovered by the Plan.

With respect to Lloyd Green's loss of consortium claim, Defendants rely on the opinion of Attorney Simmons that a reasonable allocation of settlement proceeds to Lloyd Green's claim would be approximately 15%. *See* Affidavit of Jack Simmons ¶ 4. There is simply no evidence in this record that any of the settlement proceeds were actually allocated to be payment for his claim rather than a settlement of Ellen Green's claims.

The Plan shall be subrogated to the Covered Person's right of recovery against such third party, to the full extent of all benefits paid.

Summary Plan Description for Hannaford Health Plan at H109–10, attached as Ex. D to the affidavit of Peter Rubin. Relying on selected language from this provision, Defendants argue that the "third parties" referred to in the reimbursement provision are parties "that may be responsible for causing the expense or loss for which benefits may be paid under the Plan" and Mrs. Green's UM carrier is not liable to her for her injuries, but rather, is liable under its contractual duty to pay to her any damages she is unable to collect from the third party liable for her injuries. That is, Defendants contend, that the reimbursement provision does not include the right of reimbursement with respect to an entity that is not the wrongdoer who caused the injury to the beneficiary.

Plaintiff disagrees, relying on the language of the Plan itself rather than the SPD. Specifically, Plaintiff asserts that section 10.5 provides that the Covered Person must provide notice to the Plan for any expense or loss for which there may be a claim against a third party. Hannaford Health Plan at H46, attached as Ex. B to affidavit of Peter Rubin. In addition, section 10.06 provides that a Covered Person "who recovers payment from a third party shall reimburse the Plan for the amount of benefit payments made ... from the proceeds received from the third party." *Id.*

The Court concludes that the language of the Plan does not exclude the funds recovered from Green's own insurer from the right-of-recovery provision. The language of the Plan is clear; the Plan is entitled to recover against all funds from third parties, not only third parties who caused injury. Indeed, Defendants' argu-

ment and the provision of the SPD omits the reference to "any third party associated with the claim." Summary Plan Description for Hannaford Health Plan at H110, attached as Ex. D to the affidavit of Peter Rubin. Therefore, the Court will not reduce the amount of the identifiable proceeds requested by Defendants.

### 2. Irreparable Harm

■ Defendants contend that the Plan has not shown that it is in danger of suffering irreparable injury in the absence of an injunction because where economic damages are the injury relied upon as the basis for seeking injunctive relief, "it is to be remembered that economic harm, in and of itself, is not sufficient to constitute irreparable injury." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop,* 839 F.Supp. 68, 70 (D.Me.1993). Although this Court has previously held that economic injury alone is an insufficient basis upon which to issue an injunction, *Bishop* and other cases holding similarly are distinguishable from this case. In the cases on which Defendants rely, damages, if proven at trial, could be recovered for the alleged economic harm. In this case, once the identifiable proceeds in Ellen Green's possession are dissipated, Plaintiff no longer has an equitable right pursuant to ERISA to recover the funds from Ellen Green personally. The purpose of a preliminary injunction is to maintain the status quo by preserving the viability of Plaintiff's equitable right of recovery until a trial on the merits can finally resolve the dispute. In this case, such preliminary injunctive relief is necessary to preserve Plaintiff's equitable remedy against Defendants and without it, that equitable right will be irretrievably lost to Plaintiff.

### 3. Balance of the Harms and the Public Interest

■ The balance of the hardships weighs heavily in favor of granting a pre-

liminary injunction. Ellen Green accepted $141,335.75 from the Plan to pay for her medical expenses and acknowledged the Plan's recovery provision for those expenses. Amended Complaint Exs. A and B. Defendants still have $83,941.21 in "identifiable proceeds" remaining from the settlement. Defendants will not be harmed by granting the preliminary injunction because granting Plaintiff's request for relief will merely maintain the status quo until a final determination can be made in this matter. Conversely, if this request is not granted, Defendants will be able to continue to deplete funds that potentially belong to the Plan as to which Plaintiff has made a showing of likely recovery on its equitable claims to the funds. Thus, injunctive relief is necessary and appropriate. The Court also finds that the public at large benefits from preserving the status quo.

### III. CONCLUSION

Accordingly, the Court **ORDERS** that Plaintiff's Motion for Preliminary Injunction be, and it is hereby, **GRANTED.** It is further **ORDERED** that Defendants Ellen Green and Lloyd Green are **ENJOINED:**

(1) from withdrawing, transferring, or removing all funds in her or their Peoples Bank CD account that has a current balance of Ten Thousand Thirty–One Dollars and Six Cents ($10,031.06);

(2) from withdrawing, transferring, or removing all funds in her or their Peoples Heritage savings account that has a current balance of Sixty–One Thousand Four Hundred Seventy–Nine Dollars and Fourteen Cents ($61,479.14); and

(3) from withdrawing, transferring, or removing any more than Eight Thousand Nine Hundred Sixty–Four Dollars ($8,964.00) from her or their Peoples Heritage checking account such that a

balance of Twelve Thousand Four Hundred Thirty–One Dollars and One Cent ($12,431.01) must remain in that account.