Karen L. MANK as plan administrator for the Hannaford Health Plan, Plaintiff

v.

Ellen GREEN, Lloyd Green, Jack H. Simmons, and Berman & Simmons, P.A., Defendants

No. CIV. 03–42–P–C.

United States District Court, D. Maine.

May 24, 2004.

Seth W. Brewster, Verrill & Dana, Gregg H. Ginn, Verrill & Dana, Portland, ME, for Karen L Mank Plaintiff.

Julian L. Sweet, Berman & Simmons, P.A., Lewiston, ME, Peter J. Rubin, Bernstein, Shur, Sawyer, & Nelson, Daniel J. Mitchell, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Ellen Green, Jack H Simmons, Berman & Simmons, PA, Lloyd Green, Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Senior District Judge.

Plaintiff brought this action pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Counts I, II, III), federal common law (Counts IV, V, VI, VII), and state common law (Counts VIII, IX, X, XI) against Defendants Ellen Green, Lloyd Green, and their attorneys, Jack H. Simmons and the law firm of Berman & Simmons, P.A. *See* Amended Complaint and Request for Injunctive Relief ("Amended Complaint") (Docket Item No. 64). On December 22, 2003, the Court granted Plaintiff's "Emergency Motion for Preliminary Injunction" (Docket Item No. 40) on Counts I and II and enjoined Defendants Ellen Green and Lloyd Green from withdrawing, transferring, or removing certain funds in their possession, custody, or control.[1] Now before the Court are several motions for summary judgment: (1) Plaintiff's Motion for Partial Summary Judgment on Counts II and III of the Amended Complaint (Docket Item No. 94); (2) Motion for Summary Judgment of Defendants Ellen Green and Lloyd Green on Counts I and II (Docket Item No. 103); and (3) Motion for Summary Judgment of Defendants Jack H. Simmons and Berman & Simmons, P.A. on Count III (Docket Item No. 107). For the reasons set forth below, the Court will grant summary judgment in favor of Plaintiff on Count II and deny both Plaintiff's and Defendants' motions for summary judgment with respect to Count III.[2]

## I. Facts

Plaintiff Karen L. Mank ("Plaintiff") is the plan administrator of the Hannaford Health Plan ("the Plan"), an "employee welfare benefit plan" within the meaning of ERISA. Plaintiff's Supporting Statement of Material Facts ("PSSMF") (Docket Item No. 100) ¶ 1. Hannaford Bros. Co. (the "Company"), a Maine corporation with its principal place of business in Scarborough, Maine, established the Plan to provide health benefits to its employees. *Id.* ¶¶ 5, 7. The Plan is funded by The Hannaford Bros. Co. Tax Exempt Employee Benefits Trust (the "Trust"), and contributions to the Trust are made by both the Company and its employees. *Id.* ¶ 8.

Defendant Ellen Green, who is an employee of the Company, has participated in the Plan and is a "Covered Person" under the terms of the Plan. *Id.* ¶ 10. On June 18, 2001, Mrs. Green was involved in an accident in which a vehicle struck her while she was walking (the "accident").

---

1. Specifically, the Court concluded that $83,941.21 in identifiable proceeds from a third-party settlement remained in the possession of the Defendants Ellen Green and Lloyd Green in three accounts at Peoples Bank and enjoined Ellen and Lloyd Green:

   (1) from withdrawing, transferring, or removing all funds in her or their Peoples Bank CD account that has a current balance of Ten Thousand Thirty–One Dollars and Six Cents ($10,031.06);
   (2) from withdrawing, transferring, or removing all funds in her or their Peoples Heritage savings account that has a current balance of Sixty–One Thousand Four Hundred Seventy–Nine Dollars and Fourteen Cents ($61,479.14); and
   (3) from withdrawing, transferring, or removing any more than Eight Thousand Nine Hundred Sixty–Four Dollars ($8,964.00) from her or their Peoples Heritage checking account such that a balance of Twelve Thousand Four Hundred Thirty–One Dollars and One Cent ($12,431.01) must remain in that account.

   *Mank v. Green,* 297 F.Supp.2d 297, 305 (D.Me.2003).

2. Plaintiff has not asked for summary judgment on Count I (entitled "ERISA: Mandatory Injunction—the Greens"), but the Greens have requested summary judgment on this count. The Court previously has issued a preliminary injunction in this case, and Plaintiff no longer appears to seek any additional injunctive relief against the Greens under Count I. Rather, she seeks the equitable relief described in Count II, which the Court will grant. The Court will deny Defendants' request for summary judgment on Count I.

*Id.* ¶ 11. She suffered injuries requiring medical care, and she incurred significant medical expenses arising from those injuries. *Id.* ¶¶ 11–12. In accordance with the terms of the Plan, the Plan paid medical benefits totaling $141,335.75 on behalf of Mrs. Green after she was injured in the accident. *Id.* ¶ 14. The Plan includes a provision entitled "Right of Recovery or Reimbursement."[3] *Id.* ¶ 16 and Second Affidavit of Karen L. Mank (Mank Aff. II) (Docket Item No. 96), Ex. 1 at 42–43.

Mrs. Green retained Attorney Simmons and Berman & Simmons to represent her in a legal action seeking recovery in connection with the accident. PSSMF ¶ 18. On July 31, 2001, Mrs. Green completed and signed a request for information from the Plan relating to certain medical claims for injuries in the accident. *Id.* ¶ 19. Specifically, Mrs. Green described the accident, provided the name and address of Attorney Simmons, and agreed as follows:

> I/We am/are aware of the right of recovery provision contained in the Plan. I/We express my/our agreement to be bound by the provision. I/We understand, however, that my/our failure to express such agreement shall in no way affect the rights of the Company under the provision. I/We further agree that I/We shall not do anything to prejudice the rights of the Company in this matter.

*Id.* ¶ 19 and Mank Aff. II, Ex. 2. On October 3, 2001, Mrs. Green completed and signed another request for information relating to medical claims for injuries in the accident which included the same language regarding the Plan's right-of-recovery provision as was included in the July 31, 2001, request for information. *Id.* ¶ 20 and Mank Aff. II, Ex. 3.

The parties agree that settlement funds totaling $300,000 were deposited in the Berman & Simmons client trust account on January 22, 2002. Defendants' Consolidated Statement of Material Facts in Support of Motions for Summary Judgment ("DCSMF") (Docket Item No. 109) ¶ 16. On or about February 1, 2002, $100,060.95 in fees and costs from the settlement proceeds were deposited into the Berman & Simmons operating account, along with other unrelated funds. PSSMF ¶¶ 42–43; DCSMF ¶ 18. Between February 8, 2002, and March 8, 2002, Berman & Simmons made payments from the settlement proceeds to Ellen Green totaling $187,627.10.[4]

3.  At the time of the accident, the Plan's right-of-recovery provision read, in relevant part:
    A Covered Person who recovers payment from a third party shall reimburse the Plan for the amount of benefit payments made, in full and without reduction for attorneys' fees or costs, from the proceeds received from the third party, whether the proceeds are paid by way of settlement, judgment, or otherwise, and the Plan shall have an equitable interest in the amount recovered, or to be recovered, for the amount of benefit payments made. The Plan shall have the right to withhold future benefit payments to which a claimant or a Covered Person through whom the claimant derives his or her claim may be entitled until the obligation to the Plan under the foregoing provisions of this Section, plus interest, has been satisfied. This right to offset shall not limit the right of the Plan to recover an erroneous or excess payment in any other manner, and the Plan shall equally have the right to institute legal action against a Covered Person for failure to reimburse the Plan or to honor its equitable interest in the amount recovered from a third party, and the Covered Person shall be liable in such event for all costs of collection, including reasonable attorneys' fees. For purposes of this Section, the "amount of benefit payments made" shall include in appropriate cases the reasonable cash value of any benefits provided in the form of services.
    Hannaford Health Plan at 42–43, attached as Ex. 1 to Mank Aff. II.

4.  The Court previously concluded that "[t]here is simply no evidence in this record that any of the settlement proceeds were actu-

*Id.* ¶ 25. Mrs. Green recovered for both her medical bills and other damages, but there was no breakdown between these amounts. *Id.* ¶ 23. From the settlement proceeds, Berman & Simmons also made payments to various healthcare providers. *Id.* ¶ 24. Mrs. Green, Attorney Simmons, and Berman & Simmons never made any payment to the Plan. *Id.* ¶ 26.

On February 4, 2002, Berman & Simmons transferred $300,000 from its operating account to its so-called "Melon account," an interest-bearing account with KeyBank.[5] *Id.* ¶ 44; DCSMF .¶ 20. On June 27, 2002, Berman & Simmons transferred the balance of its Melon account to its operating account. PSSMF ¶ 47. On July 2, 2002, and July 3, 2002, respectively, Berman & Simmons then made additional transfers from the operating account, first to the firm's payroll and payroll tax withholding accounts and then to the partners (including Attorney Simmons) as part of the firm's distribution to the partners for the period ending June 30, 2002.[6] FSSMF ¶¶ 48, 49. Attorney Simmons deposited the amount of his firm distribution into a personal joint checking account. PSSMF ¶ 51. Attorney Simmons subsequently has made both withdrawals from and deposits into this checking account. Defendants'

Statement of Additional Material Facts (Docket Item No. 109) ¶¶ 5–6.

By letter dated May 24, 2002, the Plan sent Mrs. Green a copy of the right-of-recovery provision (as amended in March 2002) and a Recovery of Plan Assets Notice, requesting that she complete and return the notice within one month. PSSMF ¶ 27. On June 5, 2002, Mrs. Green called and spoke by telephone with a Plan representative. *Id.* ¶ 28. She confirmed that she had received the Notice and advised that her legal claims had been settled in January 2002. *Id.* Mrs. Green refused to disclose the terms of the settlement and reiterated that Attorney Simmons continued to represent her. *Id.* On June 13, 2002, the Plan's legal counsel, Seth W. Brewster, sent a letter to Attorney Simmons. *Id.* ¶ 29. In the letter, Attorney Brewster asked Attorney Simmons to advise him "when the Health Plan will be reimbursed for the payments made on behalf of Ms. Green." Amended Complaint, Ex. D. Attorney Simmons responded to the Plan's June 13, 2002 letter by letter dated June 19, 2002, in which he stated:

> The case was settled and the monies distributed a long time ago. For your information, there was very little coverage from the tortfeasor considering the nature and extent of Mrs. Green's inju-

---

ally allocated to be payment for [Mr. Green's] claim rather than a settlement of Ellen Green's claims." *Mank,* 297 F.Supp.2d at 303. The record now before the Court continues to reflect that Berman & Simmons made disbursements from the settlement proceeds only to itself, Mrs. Green, and several health care providers and fails to indicate that any specific portion of the settlement was actually apportioned to Mr. Green's loss of consortium claim or that Berman & Simmons paid any of the settlement proceeds to Lloyd Green or to Ellen and Lloyd Green jointly.

5. The record does not reflect the precise balance of the operating account after the $300,000 transfer on February 4, 2002.

6. Defendants assert that the transfer to the Melon account, the transfer back to the operating account, and the transfers to the payroll and tax withholding accounts included the $100,060.65 in fees and costs from the Green settlement. Plaintiff does not respond to this qualification with respect to the transfer to the Melon account and responds only that the transfers *may* have included such amount with respect to the transfers back to the operating account and to the payroll and tax withholding accounts. *See* Defendants' Opposing Statement of Material Facts (Docket Item No. 113) ¶¶ 44, 47, 48; Plaintiff's Reply Statement of Facts (Docket Item No. 119) ¶¶ 47–48.

ry. In any event, without regard to legal issues involving questions of equitable deduction, the fact of the matter is that we were never contacted by Hannaford Bros. and Hannaford Health Plan. Our tort file has long been closed.

PSSMF ¶ 30 and Amended Complaint, Ex. E. Prior to February 2003 (when Plaintiff filed this action), Defendants refused to provide any information to the Plan or to make any payments to the Plan.[7] *Id.* ¶ 32.

## II.   Standard

■ Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " 'Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir. 1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden has been met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial worthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). Cross motions for summary judgment do not alter the basic standard for summary judgment; rather, they require the court to determine whether either of the parties deserves judgment as a matter of law on the undisputed facts. *Adria Int'l Group, Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir.2001).

## III.   Discussion

### A.   Counts I and II against the Greens

Plaintiff seeks summary judgment against the Greens with respect to Count II and asks the Court to impose a constructive trust on $83,941.21 currently held in the Greens' Peoples Bank accounts pursuant to a preliminary injunction previously issued by this Court. The Greens counter with their own request for summary judgment on Counts I and II. The parties agree that the availability of the remedy sought by Plaintiff under section 502(a)(3) of ERISA turns on whether Plaintiff's request for relief is properly characterized as a request for legal or equitable restitution *See* 29 U.S.C. § 1132(a)(3) (authorizing a plan fiduciary to bring an action "to obtain other appropriate equitable relief" to redress violations of plan terms).

In *Great–West Life & Annuity Insurance Company v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Supreme Court considered whether section 502(a)(3) authorized an action to recover settlement proceeds pursuant to an

---

7.   On June 24, 2002, the Plan's counsel sent another letter to Attorney Simmons. PSSMF ¶ 31. However, this letter was not included in the record. As a result, the content of the letter is unknown.

ERISA plan's reimbursement provision that, in accordance with a state court order, were paid by two checks: one to a state-law special needs trust to benefit the injured plan beneficiary, respondent Janette Knudson, and the other to her attorney (who, after deducting his own fees and costs, deposited the funds in a client trust account).[8] The petitioners, Great–West Life & Annuity Insurance Company and the plan sponsor, brought an action against respondent and her then husband to recover the amount of medical benefits previously paid on her behalf pursuant to the plan. *Knudson*, 534 U.S. at 207–08, 122 S.Ct. 708. Despite the petitioners' attempt to characterize their claim for restitution as one for equitable relief, the Supreme Court concluded that "[h]ere— petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." *Id.* at 210, 122 S.Ct. 708. According to the Supreme Court, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S.Ct. 708. Because the funds being sought by the petitioners were not in the respondents' possession,

> [t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits

that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

*Id.* The Supreme Court concluded that because the petitioners sought legal rather than equitable, relief, the action was not authorized by section 502(a)(3) of ERISA. *Id.* at 221, 122 S.Ct. 708. Since *Knudson*, courts have allowed actions for equitable restitution under section 502(a)(3) in circumstances in which the defendant possessed identifiable funds from a third-party recovery which, pursuant to a plan provision, belonged in good conscience to the plan.[9] *See, e.g., Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348, 358 (5th Cir.2003), *reh'g en banc den.*, 89 Fed.Appx. 905, 2004 WL 63546 (5th Cir.2004), *petition for cert. filed*, 72 U.S.L.W. 3513 (Feb. 5, 2004); *Administrative Committee of the Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco*, 338 F.3d 680, 687–88 (7th Cir.2003), *petition for cert. filed*, 72 U.S.L.W. 3452 (Dec. 23, 2003).

After evaluating the evidence then on the record, this Court previously concluded, in the context of Plaintiff's motion for preliminary injunctive relief against the Greens, that "the Plan is seeking equitable relief [from the Greens] in the form of equitable restitution pursuant to the Plan's

**8.** The settlement allocated $13,828.70 to the plan for reimbursement of the approximately $400,000 paid for Ms. Knudson's medical expenses, which the plan did not accept. *See Knudson*, 534 U.S. at 207, 122 S.Ct. 708.

**9.** The Court recognizes that other courts have read *Knudson* more narrowly and have concluded that a plan fiduciary's action to enforce a reimbursement provision through a

constructive trust or an equitable lien is a legal action even if the defendant has possession of identifiable funds from a third-party recovery. *See, e.g., Qualchoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir.2004); *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164, 1166–67 (9th Cir.2002). The Court declines to follow these cases in favor of the approach taken by the *Bombardier* and *Varco* courts.

right-of-recovery provision." *Mank,* 297 F.Supp.2d at 302–03. The Court's injunctive order was based on the Plan's right-of-recovery provision and Plaintiff's preliminary showing of the existence of identifiable proceeds from a third-party recovery that were in the Greens' possession Specifically, the Court concluded that $83,941.21 of particular funds that belong in good conscience to the Plan (that is, identifiable proceeds from the Green settlement) existed in three Peoples Bank accounts in the Greens' names. *Id.* at 303.

The Greens offer no new arguments with respect to these particular issues, and the Court will not revisit its initial conclusions with respect to the proper characterization of Plaintiff's request for relief or the existence and amount of identifiable proceeds from the Green settlement in the Greens' possession.[10] In accordance with this Court's preliminary injunction, the Court now finds that $83,941.21 of the Green settlement remains identifiable and in the Greens' possession at this time. Accordingly, the question before the Court at this stage of the proceedings is whether the interests of equity are served by imposing a constructive trust on these funds in favor of Plaintiff.

■ The remedy of equitable restitution sought by Plaintiff under section 502(a)(3) is subject to the traditional equitable considerations. *See Knudson,* 534 U.S. at 210, 122 S.Ct. 708 (indicating that the term "equitable relief" in section 502(a)(3) "must refer to 'those categories of relief that were *typically* available in equity ....' ") (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). The Court of Appeals for the First Circuit previously offered guidance

---

**10.** Plaintiff asserts that the law-of-the-case doctrine prohibits the Court from revisiting the legal issues addressed in the preliminary injunction order, while the Greens argue that the Court's earlier ruling was designed to predict the probable outcome of the action and does not preclude them from arguing the merits of their case at this stage in the proceedings. However, the Greens' summary judgment motion and responsive pleadings offer virtually no new arguments or facts; indeed, the Greens' motion is almost identical to their objection to Plaintiff's motion for preliminary injunctive relief. Faced with a similar situation, the Court of Appeals for the First Circuit stated:

> We acknowledge that we have repeatedly emphasized that conclusions and holdings regarding the merits of issues presented on appeal from a grant of a preliminary injunction are to be understood as statements as to probable outcomes. *E.g., A.M. Capen's Co. v. American Trading and Prod. Corp.,* 74 F.3d 317, 322 (1st Cir.1996); *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 6 (1st Cir.1991). The concern informing this caveat arises when we are asked to rule on the propriety of a district court's grant of a preliminary injunction (or otherwise issue a preliminary ruling) without benefit of full argument and a well-developed record. In this case, however, the record before the prior panel was "sufficiently developed and the facts necessary to shape the proper legal matrix [we]re sufficiently clear," *Cohen II,* 991 F.2d at 904, and nothing in the record subsequently developed at trial constitutes substantially different evidence that might undermine the validity of the prior panel's rulings of law.

*Cohen v. Brown University,* 101 F.3d 155, 169 (1st Cir.1996), *cert. denied,* 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997). Presented with only bare assertions, rather than analysis or authority, that the prior ruling was incorrect, the Court of Appeals declined to "change its mind." *Id.* The Greens have not offered any arguments directly in response to the Court's conclusions at the preliminary injunction stage, nor does the record now developed at the summary judgment stage "constitute[] substantially different evidence that might undermine the validity" of this Court's prior ruling. *See id.* Therefore, the Court's prior ruling with respect to the nature of the relief sought against the Greens and the existence and amount of identifiable proceeds from the settlement in the Greens' possession is treated by the Court as the law of this case.

on the weighing of equities in the context of a traditional equitable action for restitution under ERISA's federal common law: "[t]he trial court should consider whatever factors it may reasonably believe shed light on the fairness of reimbursement, and weigh those factors against the backdrop of general equitable considerations and the guiding principles and purposes of ERISA." *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957, 967 (1st Cir.1989), *abrogated on other grounds by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon,* —— U.S. ——, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004). The Court finds this guidance instructive in the instant case with respect to Plaintiff's claim for equitable restitution under section 502(a)(3).

■ Plaintiff argues that the equities of this case weigh in favor of granting her the relief she seeks from the Greens. Plaintiff asserts that Mrs. Green agreed to abide by the terms of the Plan when she originally accepted benefits under the Plan and that she twice acknowledged the Plan's right of recovery following her accident. The Greens counter that it would be inequitable to impose the constructive trust that Plaintiff has requested. Specifically, the Greens argue that the Plan slept on its rights by failing to take action when Mrs. Green informed the Plan that she was pursuing a claim against a third party. According to the Greens, the Plan's failure to act constitutes a waiver of its right to pursue reimbursement from Mrs. Green. The Greens argue that they acted on the assumption that the Plan would not be asserting a claim and, as a result, were deprived of any opportunity to negotiate a settlement that might have avoided the instant litigation and the attempted seizure of their bank accounts. The Greens also argue that it would be contrary to good conscience to deprive Mrs. Green of the entirety of the remaining settlement proceeds. Mrs. Green estimates that her total damages relating to the accident were approximately $1 million, and the Greens claim that it is inequitable to allow the Plan to recover Mrs. Green's remaining $83,941.21 in settlement proceeds because it imposes a much higher proportional burden on her than upon the Plan.[11]

■ After weighing the equities of this situation, the Court concludes that it is not inequitable to permit the Plan to enforce its right-of-recovery provision at this time with respect to the remaining identifiable proceeds in the Greens' possession. As the Court of Appeals for the First Circuit has noted:

"A primary purpose of ERISA is to ensure the integrity and primacy of the written plans ... [so that] the plain language of an ERISA plan should be given its literal and natural meaning." *Health Cost Controls,* 139 F.3d at 1072 (citing *Burnham v. Guardian Life Ins. Co.,* 873 F.2d 486, 489 (1st Cir.1989))

11. Tied to this argument is the Greens' assertion that the Plan should be barred by the make-whole doctrine. Specifically, the Greens argue that Mrs. Green, as a plan participant, should be made whole (or as close thereto as possible) for her injuries before the Plan is permitted to exercise its reimbursement rights. However, "where the terms of an ERISA plan confer upon it an unqualified entitlement to reimbursement for the value of services provided to a member, the ERISA plan administrator need not demonstrate that the settlement fund, from which reimbursement is sought, fully compensated the plan member." *Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 281 (1st Cir.2000). Here, the Plan calls for reimbursement "for the amount of benefit payments made, in full and without reduction for attorneys' fees or costs." Hannaford Health Plan, Ex. 1 to Mank Aff. II, at 42. Accordingly, the Court concludes that the make-whole doctrine is not applicable to Plaintiff's claim for equitable restitution.

(emphasis added). Against this plain legislative purpose, if the ERISA plan expressly provides that its members are obligated to reimburse the plan for "the value of services provided, arranged, or paid for," we do not think it can be considered "unfair" to require plan members to abide by the agreement. *See Ryan,* 78 F.3d at 127 (" 'Enrichment is not "unjust" where it is allowed by the express terms of the . . . plan.' ") (citation omitted) . . . .

*Harris,* 208 F.3d at 279. The Plan contains express language providing for a right of recovery with respect to third-party recoveries. Further, Mrs. Green signed two requests for information that contained clear disclosures about the Plan's right-of-recovery provision Mrs. Green agreed to abide by the Plan's right-of-recovery provision, both by her acceptance of benefits and her signature on the two requests for information. The Court is not persuaded that the Plan's failure to act more promptly precludes Plaintiff from seeking equitable restitution of the remaining identifiable proceeds from the settlement in the Greens' possession.[12] Accordingly, the Court will grant summary judgment on Count II in favor of Plaintiff.

**B. Count III against Attorney Simmons and Berman & Simmons, P.A.**

In her motion for partial summary judgment, Plaintiff requests that a constructive trust in the amount of $57,394.54 be imposed on certain assets in the possession of Berman & Simmons and/or Attorney Simmons on a theory of equitable restitution so as to ensure that the Plan is fully reimbursed for the medical expenses that it paid on behalf of Mrs. Green or, in the alternative, that the Court grant her other appropriate equitable relief with respect to Count III. Attorney Simmons and Berman & Simmons seek summary judgment on Count III as well. For the reasons set forth below, the Court concludes that Plaintiff is seeking legal, rather than equitable, restitution against Attorney Simmons and Berman & Simmons, but that the parties have not had an opportunity to conduct discovery on the facts or brief the legal issues that would enable the Court to determine whether Plaintiff is entitled to any other *equitable* relief with respect to Count III. Accordingly, the Court will not grant summary judgment on Count III at this stage in the proceedings.

**1. Equitable Restitution**

■ Plaintiff argues that any settlement funds or assets in an attorney's possession are subject to the Plan's right to reimbursement. According to Plaintiff, *Knudson* stands for the proposition that identifiable proceeds from a settlement or other recovery in the control of any named defendant may be recovered under the principles of equitable restitution if such proceeds belong in good conscience to the

---

12. The Greens make a passing reference to the doctrine of laches and suggest that Plaintiff's failure to seek recovery more quickly should bar her attempt to recover the remaining identifiable proceeds in the Greens' possession. However, in the Court's view, the Greens have not made the necessary showings for a successful laches defense: an unreasonable delay by Plaintiff and resulting prejudice to them. *See K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 911 (1st Cir. 1989). In particular, the Greens have not demonstrated that they have been prejudiced by Plaintiff's delay in bringing this action. Indeed, while Mrs. Green originally received settlement funds sufficient to fully reimburse the Plan for the medical benefits paid on Mrs. Green's behalf, only a portion of that amount remains identifiable and in the Greens' possession at this time. As a result, the Greens arguably have benefited from the Plan's failure to act more promptly, and the record contains no evidence of any actual prejudice suffered by the Greens.

plaintiff. Plaintiff urges the Court to use various principles of equitable tracing to conclude that Attorney Simmons and/or Berman & Simmons possess identifiable proceeds from Mrs. Green's settlement.

Among the arguments offered by Attorney Simmons and Berman & Simmons is their assertion that Plaintiff cannot demonstrate that they possess identifiable proceeds from Mrs. Green's settlement at this time and that, as a result, Plaintiff seeks legal, rather than equitable, restitution against them.[13] In the Court's view, this argument is dispositive of Plaintiff's claim for restitution against Attorney Simmons and Berman & Simmons under Count III.

As the Court has previously noted, *Knudson* provided the framework for a proper claim for equitable restitution: "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213, 122 S.Ct. 708. If the defendant does not possess particular funds or property that belongs in good conscience to the plaintiff, then the plaintiff is seeking legal, rather than equitable, restitution. *See id.* at 214, 122 S.Ct. 708. The Court concludes on the undisputed facts of this case that Plaintiff is seeking legal, rather than equitable, restitution from Attorney Simmons and Berman & Simmons because the record does not demonstrate that either of those Defendants possesses identifiable proceeds from the Green settlement at this stage in the proceedings.

The record reflects without dispute that Berman & Simmons deposited the $100,060.95 in attorney fees and costs for the Green settlement into its firm operating account on February 1, 2002 (along with other unrelated funds). On February 4, 2002, Berman & Simmons transferred an amount well in excess of $100,060.95 to its Melon account. Berman & Simmons made additional deposits to the Melon account between March and May of 2002. The entire Melon account balance was transferred to the operating account in late June of 2002 and then to the firm's payroll and tax withholding accounts for distribution to the firm's equity partici-

---

**13.** Attorney Simmons and Berman & Simmons also argue that Count III does not state a legally cognizable claim pursuant to section 502(a)(3) because it is outside the scope of permissible equitable actions under section 502(a)(3) and is inconsistent with the plain terms of the Plan. They point out that any proceeds paid to them as fees and costs are no longer in Mrs. Green's control or possession and also that neither Attorney Simmons nor Berman & Simmons is a "Covered Person" as defined in the Plan. They further argue that Mrs. Green's portion of the settlement proceeds was more than adequate to satisfy the Plan's recovery right and that their fees and costs should not be subject to a constructive trust because Plaintiff failed to seek the funds from Mrs. Green while the full amount sought still remained identifiable and in Mrs. Green's possession—that is, at most, the funds that belong in good conscience to

the Plan were distributed in their entirety to Mrs. Green. Attorney Simmons and Berman & Simmons also argue that Plaintiff's attempt to impose a constructive trust on the funds paid to Berman & Simmons must fail because the firm has the status of a *bona fide* purchaser with respect to its receipts of those funds. Because it is readily apparent to the Court that Plaintiff cannot prevail against these Defendants on the identifiable proceeds issue, it is unnecessary for the Court to reach any of the other arguments raised by the parties with respect to Plaintiff's claim for restitution under Count III, and the Court expresses no opinion on those issues. That is, even if each contested legal issue were decided in Plaintiff's favor, she could not succeed in her motion for summary judgment on that claim for restitution because she does not seek *equitable* restitution, as is required by section 502(a)(3).

pants (including Attorney Simmons) on July 3, 2002.

Plaintiff asks the Court to conclude that she seeks *particular* funds rather than *some* funds from Attorney Simmons and Berman & Simmons. To do so, she suggests that the Court should trace $57,-394.54—the difference between the amount paid by the Plan for Mrs. Green's medical benefits and the amount of identifiable proceeds from the settlement still in Mrs. Green's possession at this time—on the following path: from the firm's client trust account to its operating account to its Melon account back to the operating account and, if necessary, to the firm's payroll and payroll tax withholding accounts and, ultimately, to Attorney Simmons (either to his personal joint checking account or his home in Falmouth, Maine). While courts have not yet fleshed out the parameters of the identifiable proceeds inquiry, the Court feels certain that the exercise proposed by Plaintiff is not in the spirit of *Knudson,* in which the Supreme Court described equitable restitution in terms of actions to recover amounts "identified as belonging in good conscience to the plaintiff [that] could be *clearly traced to particular* funds or property in the defendant's possession." *Knudson,* 534 U.S. at 213, 122 S.Ct. 708 (emphasis added). In such an instance,

> [a] court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]."

> Restatement of Restitution, *supra,* § 215, Comment a, at 867.

*Id.* at 213–14, 122 S.Ct. 708.

Here, the funds at issue can scarcely be described as "particular" or "clearly" traceable. Berman & Simmons received its portion of the settlement funds more than two years ago, and these funds have traveled (along with other funds of the firm) back and forth through several different accounts and to the equity members of the firm (including Attorney Simmons). The Court determines on the specific facts of this case that the funds sought by Plaintiff have become so dissipated that Plaintiff cannot be considered to be seeking particular funds that belong in good conscience to the Plan—that is, proceeds from the Green settlement. As a result, the Court concludes that Plaintiff is seeking legal, rather than equitable, restitution in Count III of her Amended Complaint. Such relief is not authorized under section 502(a)(3). *See Knudson,* 534 U.S. at 221, 122 S.Ct. 708.

### 2. Other Appropriate Equitable Relief

█ In her reply brief in support of her motion for partial summary judgment and in her response to Defendants' motion for summary judgment on Count III, Plaintiff argues that she should prevail on Count III because the "other appropriate equitable relief" sought by Plaintiff under section 502(a)(3) contemplates other equitable remedies even if equitable restitution is not available because there are no identifiable proceeds from the Green settlement in the possession of Attorney Simmons or Berman & Simmons. In support of her argument, Plaintiff relies on *Greenwood Mills, Inc. v. Burris,* 130 F.Supp.2d 949 (M.D.Tenn.2001) (finding that "[a] lawyer who is fully aware of his client's obligation under an ERISA plan to honor the subro-

gation interest of his employer may be held liable under [section 502(a)(3) of ERISA]" and awarding equitable relief in the form of disgorgement of profits where the lawyer had knowledge of a plan's subrogation provision and counseled the plan beneficiary to lie to plan fiduciaries); *see also Great–West Life & Annuity Ins. Co. v. Bullock*, 202 F.Supp.2d 461, 465 (E.D.N.C.2002) (indicating that the court "would find a cause of action lies [under section 502(a)(3) ] where there are allegations of attorney wrongdoing or his intentional effort to 'enable' plan participants to avoid plan provisions."). Defendants, on the other hand, draw the Court's attention to cases in which courts have concluded that a plan beneficiary's attorney who receives settlement funds (or other funds in recovery) from a third party does not have any duty enforceable under section 502(a)(3) of ERISA to honor the ERISA plan's subrogation or reimbursement rights with respect to the settlement proceeds if the attorney has no professional or contractual relationship with the plan. *See, e.g., Hotel Employees & Restaurant Employees International Union Welfare Fund v. Gentner*, 50 F.3d 719 (9th Cir. 1995); *Maryland Electrical Industry Health Fund v. Levitt*, 155 F.Supp.2d 482, 484 (D.Md.2001).

Discovery in this case was previously limited to the existence and location of any identifiable proceeds from the Green settlement in Defendants' possession. *See* Order (October 8, 2003) (Docket Item No. 29). As a result of this limitation on discovery, the parties have not been afforded the opportunity to develop a record that offers a factual basis for evaluating whether any other equitable relief is warranted or for thoroughly and responsively briefing the legal question of whether "other appropriate equitable relief" is available to Plaintiff against those Defendants under section 502(a)(3) of ERISA with respect to Count III.[14] As a result, the Court is not in a position to determine whether other equitable relief is available or appropriate in this case and will deny summary judgment on Count III.[15]

### IV. Conclusion

Accordingly, it is **ORDERED** that:

(1) Plaintiff's Motion for Partial Summary Judgment be, and it is hereby, **GRANTED** with respect to Count II and **DENIED** with respect to Count III;

(2) Defendants Ellen Green and Lloyd Green's Motion for Summary Judgment on Count I and II be, and it is hereby, **DENIED**;

**14.** At oral argument, counsel for Defendants argued that the record before the Court permits the Court to conclude that there has been no wrongdoing on Defendants' part and that, therefore, summary judgment in their favor is appropriate. To support this position, Defendants point to Attorney Simmons's affidavit, which is part of the summary judgment record before the Court and which states that it was not until June of 2002 that he received a letter from Plaintiff's counsel informing him that the Plan might have a claim with respect to the Green settlement. However, Attorney Simmons's voluntary statement regarding his state of mind has not been subject to cross-examination or rebuttal by Plaintiff because of the Court's limitation

on discovery and, for that reason, does not provide a basis for granting summary judgment on Count III.

**15.** The Court notes that several of the cases cited by the parties predate *Knudson* and, further, that the Court of Appeals for the First Circuit has not evaluated the rationales set forth in *Gentner*, *Greenwood Mills*, and *Bullock* or otherwise expressed its opinion as to whether and, if so, under what circumstances an attorney may be liable under section 502(a)(3) for a violation of an ERISA plan's right-to-recovery provision. The Court expresses no opinion herein on these issues.

(3) Defendants Jack H. Simmons and Berman & Simmons's Motion for Summary Judgment on Count III be, and it is hereby, **DENIED**;

(4) a constructive trust be, and it is hereby, placed on the amount of the identifiable proceeds subject to this Court's preliminary injunction of December 22, 2003, in the amount of Eighty–Three Thousand Nine Hundred Forty–One Dollars and Twenty–One Cents ($83,941.21), *see supra* at 2, n. 1, and, further, that Defendants Ellen Green and Lloyd Green be, and they hereby are, **ORDERED** to pay said amount to Plaintiff within thirty (30) days of the date of this Order; and

(5) the Scheduling Order in this case be modified to reopen discovery and the motion deadlines be adjusted accordingly to afford the parties an opportunity to file additional dispositive motions if they wish to do so.