**GREAT–WEST LIFE & ANNUITY INSURANCE COMPANY,**
Plaintiff,

v.

**John P. BULLOCK, Jr., Darren G. Jackson and Gay, Stroud & Jackson, L.L.P., Defendants.**

**No. 5:01–CV–658–H.**

United States District Court,
E.D. North Carolina,
Western Division.

Feb. 28, 2002.

**ORDER**

MALCOLM J. HOWARD, District Judge.

This matter is before the court on a motion to dismiss and a motion to withdraw filed by defendants Darren Jackson (Jackson) and Gay, Stroud & Jackson, L.L.P. (the firm). Jackson and the firm contended that plaintiff failed to state a claim for relief, *see* Fed.R.Civ.P. 12(b)(6), and that there was insufficient service of process, Fed.R.Civ.P. 12(b)(4). Jackson and the firm subsequently filed a motion to withdraw their Rule 12(b)(4) motion to dismiss. Accordingly, the court GRANTS the motion to withdraw, leaving only defendants' Rule 12(b)(6) motion to dismiss for consideration.

### STATEMENT OF THE CASE

Plaintiff filed a complaint on August 9, 2001, seeking to enforce an employee benefit plan covered by ERISA, 29 U.S.C. § 1001, *et seq.*, and alleging claims of tortious interference with contractual relations and conversion. The facts, as alleged by plaintiff, are as follows: plaintiff is the fiduciary of the Health and Welfare Plan for Employees and Dependents of Carolina Concrete Pumping (the Plan). According to the Plan, plaintiff was entitled to recover from John Bullock (Bullock) or his legal representative moneys received from a third party for benefits payable under the Plan. (Compl. at 3, ¶ 11). The Plan specified that Bullock and his legal representative would be liable to plaintiff for the amount of the benefits paid. (*Id.* at 4, ¶ 11). Bullock signed the Plan, but his attorney did not.

Upon sustaining injuries as a result of a vehicular collision, Bullock received $40,000 worth of medical benefits from plaintiff. He thereafter recovered $150,000 pursuant to a settlement agreement with the third party who caused Bullock's injuries. In his proceedings against the third party, Bullock was represented by Jackson. Although Jackson was aware of plaintiff's right to recover the settlement proceeds, Jackson failed to reimburse the Plan, and instead disbursed the proceeds.

### COURT'S DISCUSSION

**I. Standard of Review**

In reviewing a motion to dismiss, the court should view the allegations of the complaint in the light most favorable to the plaintiff. *See De Sole v. United States,* 947 F.2d 1169 (4th Cir.1991). The court must accept the factual allegations of the complaint but is not bound with regard to its legal conclusions. *See United Mine Workers v. Wellmore Coal Corp.* 609 F.2d 1083, 1085 (4th Cir.1979). Plaintiffs are entitled to reasonable inferences by the court in ruling on a motion to dismiss. *See Mylan Lab. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir.1993). Motions to dismiss are granted only where plaintiffs cannot prove any set of facts which would entitle them to relief. *See Mylan Lab. v. Matkari,* 7 F.3d 1130 (4th Cir.1993).

**II. ERISA Claim**

■ In their motion to dismiss, Jackson and the firm argue that this Court should adopt the reasoning of the Ninth Circuit in *Hotel Employ. & Rest. Employ, Intern'l Union Welfare Fund v. Gentner,* 50 F.3d 719 (9th Cir.1995). The *Gentner* court held that attorneys representing plan beneficiaries, who are not signatories to the ERISA-regulated plan or who do not otherwise undertake a commitment to uphold the plan, cannot be held liable for distributing settlement proceeds to their client. *Id.* at 721. The *Gentner* court's conclusion was based upon a survey of state law indicating that mere knowledge of an insurance plan or policy containing a subrogation provision was not enough to imply a contract. *Id. See also Southern Council of Indust. Workers,* 83 F.3d 966 (8th Cir. 1996) (adopting Ninth Circuit's view and finding an attorney liable where he signed the subrogation agreement); *Great–West Life & Annuity Ins. Co. v. Hofmann,* No. 01–C–2470, 2001 WL 914469 (N.D.Ill.

Aug.13, 2001) (finding on similar facts that attorney could not be held liable unless agreed to uphold the contract).

Plaintiff argues that the court should adopt the holding of *Greenwood Mills, Inc. v. Burris,* 130 F.Supp.2d 949 (M.D.Tenn. 2001). In *Greenwood,* the Middle District of Tennessee held that the attorney in that case was held liable for his actions in contravention of an ERISA-regulated plan, where the attorney had notice of the plan and counseled his client to lie to the plan's administrator in an effort to avoid remitting the subrogation funds. *Id.* at 961. In assessing the attorney's fault, the Tennessee court turned to Tennessee state law and the purpose and policy behind ERISA. *Id.* The court noted that by refusing to distribute the funds to the plan's fiduciary and counseling his client to lie, the attorney erected a barrier to the plan's ability to recover funds by enabling participants to ignore their obligations under an ERISA-regulated plan. *Id.* at 960–61.

The court finds that although both *Gentner* and *Greenwood* are instructive and persuasive, neither case is dispositive. The *Gentner* court reached its conclusion based upon a survey of various states' contract and insurance law, without considering the policies and practices behind ERISA. While the court favors the approach taken in *Greenwood,* it is also distinguishable from the present action. For, unlike the lawyer in *Greenwood,* there are no allegations of wrongdoing on the part of defendants-attorneys.

This court's independent analysis of this complex and novel issue yields an approach similar to that of the *Greenwood* court, but reaches the same conclusion as the *Gentner* court. The ERISA section under which plaintiff brings its suit, 29 U.S.C. § 1132(a)(3), provides:

A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (2000). Although ERISA grants a right to sue for violations of its provisions, it does not specify who can be held liable for those violations.

Where ERISA is silent on an issue, the Supreme Court has directed lower federal courts to develop "federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987). In so doing, federal courts, including the Fourth Circuit, have consistently drawn from and sanctioned the use of the forum state's law, if that law is compatible with ERISA's policies. *Jenkins v. Montgomery Indus., Inc.,* 77 F.3d 740, 743 (4th Cir.1996) (citations and internal quotation marks omitted) (affirming South Carolina district court's application of South Carolina law in ERISA case concerning an issue not addressed by the statute); *see also Pitcher v. Principal Mut. Life Ins. Co.,* 93 F.3d 407 (7th Cir.1996) (applying state law); *Mohamed v. Kerr,* 53 F.3d 911 (8th Cir.1995) (same); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321 (5th Cir.1994) (same); *Prudential Ins. Co. of America v. Cooper,* 666 F.Supp. 190, 192 (D.Idaho 1987) (applying Idaho law); *Lincoln Nat'l Life Ins. Co. v. Blight,* 399 F.Supp. 513, 515 (E.D.Pa.1975) (applying Pennsylvania law).

Only a party to an ERISA-regulated plan can be held liable under its statutory provisions. *Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund v. State Farm Mut. Auto. Ins. Co.,* 17 F.3d 1081, 1084 (7th Cir.1994). Thus, where the attorney signs the plan or agrees to abide by it, he is a party and can be sued under ERISA.

It seems that North Carolina courts are hesitant to hold attorneys liable for actions that impact non-client third-parties, as these third-parties are not in privity with the attorney's employment contract. *See Title Insu. Co. v. Smith, Debnam, Hibbert and Pahl,* 119 N.C.App. 608, 459 S.E.2d 801 (1995). Courts have allowed nonclients to sue attorneys in limited circumstances. For instance, a third-party nonclient can sue an attorney for negligence in the performance of his employment contracts where certain conditions are met. *See United Leasing Corp. v. Miller,* 300 N.C. 374, 267 S.E.2d 685 (1980) (failure to perfect title). Furthermore, the courts allow third-party creditors to recover where an attorney's refusal to honor a contact obligation of his client is coupled with bad faith or wrongdoing. For example, in *Hieb v. Lowery,* 134 N.C.App. 1, 516 S.E.2d 621 (1999), the North Carolina Court of Appeals held that an attorney was liable for his failure to distribute personal injury proceeds to a workers' compensation carrier, who possessed a valid statutory lien over those proceeds. The *Hieb* attorney distributed the proceeds to himself and his client, although the amount of the lien was in dispute and he assured the court adjudicating the disputed claim that his " 'office routinely satisfies liens against personal injury settlement proceeds' " and that he would " '*take full responsibility for those funds that* [were in his] *possession*' " *Id.* at 17, 516 S.E.2d at 631 (emphasis in original).

In essence, plaintiffs urge the court to expand attorney liability and adopt the approach of other jurisdictions, which apply the Code of Professional Responsibility

to find liability. This line of cases indicates that the attorney is liable for distributing the funds to his client, regardless of whether he was negligent or acted in bad faith. *See Leon v. Martinez,* 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994).

The North Carolina Revised Rules of Professional Responsibility and disciplinary decisions based upon those and preceding rules would necessarily support a finding of attorney liability for simply distributing the proceeds, as is alleged in the case *sub judice.* Based upon the sanctity of the attorney-client relationship, the state bar directs attorneys to distribute settlement proceeds to which a third-party may be entitled, only upon his client's directions. Where the client is silent, attorneys are instructed to hold the proceeds in trust. *See* 27 N.C.Admin.Code 2 1.15–2(m) (1997); Ethics Opinions: RPC 75 (Oct. 20, 1989).

■ The court surely agrees that an attorney's paramount obligation is to his client. However, the North Carolina courts and the Rules themselves reject the use of the professional code to establish and expand attorney liability. "[A] breach of a provision of the Code of Professional Responsibility is not 'in and of itself . . . a basis for civil liability. . . .' " *Webster v. Powell,* 98 N.C.App. 432, 439, 391 S.E.2d 204, 208 (1990) (quoting *McGee v. Eubanks,* 77 N.C.App. 369, 374, 335 S.E.2d 178, 181 (1985)). The Revised Rule of Professional Conduct 0.2 specifies the following:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. . . . Accordingly, nothing in

the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

27 N.C.A.C. 2 0.2(6).

■ Accordingly, this court concludes that North Carolina courts would find an attorney liable where the attorney is a party or signatory to a plan/contract, he otherwise agrees to disburse funds in accordance with the plan, or his refusal to distribute proceeds to the Plan was the result of negligence or was coupled with bad faith.

The principles and policies behind ERISA support the use of North Carolina law to reach the above noted conclusion. ERISA seeks to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions and ready access to the Federal Courts." 29 U.S.C.A. § 1001(b) (1999). Furthermore, ERISA was developed to "ensure the integrity and primacy of the written plans." *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir.1997). Accordingly, this court agrees with the Tennessee court that

> [t]he emphasis on the sanctity of plan provisions does not allow lawyers to be the enablers for participants to avoid following an ERISA plan's provisions without being called to account for such actions under ERISA's remedial scheme.

*Greenwood,* 130 F.Supp.2d at 960–61.

Certainly, the Court would find a cause of action lies where there are allegations of attorney wrongdoing or his intentional effort to "enable" plan participants to avoid plan provisions. However, there is no indication from ERISA's statutory language or legislative history of Congress' intent to otherwise hold attorneys liable under

ERISA. *See Gentner,* 50 F.3d at 721. In fact, several courts, including the Middle District of North Carolina, have concluded that attorneys are not fiduciaries of ERISA proceeds and therefore cannot be sued for breach of fiduciary duty. *See Rhodes, Inc. v. Morrow,* 937 F.Supp. 1202 (M.D.N.C.1996); *Chapman v. Klemick,* 3 F.3d 1508 (11th Cir.1993). Although the issue of whether an attorney is a fiduciary of ERISA-regulated plans and proceeds is based upon a different statutory section, *see* 29 U.S.C. § 1002(21)(A), the policy behind not imposing fiduciary status on the attorney applies with equal force to the present situation—"[a]n attorney has an ethical obligation to his or her client that does not admit of competing allegiances." *Chapman,* 3 F.3d at 1511, *quoted in Rhodes,* 937 F.Supp. at 1215.

In the present case, the attorney did not sign the ERISA-regulated plan and plaintiff did not allege the attorney was negligent or acted in bad faith. Plaintiff simply alleges that the attorney disbursed the proceeds in spite of his knowledge that his client was a party to a subrogation agreement. These allegations do not state a claim under section 1132(a)(3).

The court notes that plaintiff is not without remedy, in that as a signatory and beneficiary to the ERISA plan, defendant Bullock can still be sued for violation of section 1132(a)(3). However, the Court GRANTS Jackson's and the firm's Motion to Dismiss as to the ERISA claim and DISMISSES that claim with prejudice.

### III. State Law Claims: Tortious Interference of Contract and Conversion

To state a claim of tortious interference of contract in North Carolina, a plaintiff must allege: (1) the existence of a valid contract between plaintiff and a third-party; (2) the defendant has knowledge of the contract; (3) the defendant intentionally induces the third-party not to perform obligations under the contract; (4) the defendant's actions were not justification; and (5) the defendant's interference caused actual damages. *Childress v. Abeles,* 240 N.C. 667, 84 S.E.2d 176, 181–82 (1954).

In the present case, plaintiff alleged only that Jackson and his firm "interfered" with its contractual rights. Plaintiff fails to allege that defendant Jackson or his firm intentionally induced defendant Bullock to not perform his obligations under the Plan. The court therefore finds that plaintiff failed to state a claim for tortious interference.

Likewise, plaintiff does not state a claim for conversion. Under North Carolina law, "[t]he tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' " *Peed v. Burleson's, Inc.,* 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citation omitted).

In its complaint, plaintiff states the legal conclusion that Jackson and his firm "intentionally and wrongfully asserted dominion and control over the settlement payment." (Comp. at 6, ¶ 23). However, it provides no factual allegations to support this conclusory statement. *See United Mine Workers,* 609 F.2d at 1085 (holding that court is not bound by complaint's legal conclusions). Accordingly, the Court GRANTS Jackson and the firm's Motion to Dismiss as to the state law claims and DISMISSES those claims with prejudice.

### CONCLUSION

In sum, the court GRANTS defendant Jackson and the firm's Motion to Dismiss

and DISMISSES with prejudice all claims asserted against them.