# United States Court of Appeals
## For the First Circuit

No. 02-2239

KOORKIN D. MAGARIAN AND FRANCES MAGARIAN,

Plaintiffs, Appellants,

v.

ARTHUR CRAIG HAWKINS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Michael G. Sarli, with whom Gidley, Sarli & Marusak, LLP, was on brief for appellants.
Mark A. Darling, with whom Mark R. Freitas and Cogavin & Waystack, were on brief, for appellee.

February 28, 2003

**STAHL**, **Senior Circuit Judge**.   This case involves an unfortunate boating accident, in which plaintiff-appellant Koorkin Magarian ("Magarian") severely injured his eye while trying to board defendant-appellee Arthur Hawkins's ("Hawkins") boat. Magarian sued Hawkins, alleging that Hawkins was negligent by failing to provide a reasonable means to board his boat, and his wife, plaintiff-appellant Frances Magarian, brought a loss of consortium claim.   Following the close of discovery and on the eve of trial, the district court orally granted Hawkins's motion for summary judgment on the ground that Hawkins's conduct was not negligent.   The Magarians (hereinafter "Magarian") appealed this decision.   We affirm.

## I

We review a grant of summary judgment de novo and view the facts in the light most favorable to the nonmoving party, Magarian, drawing all reasonable inferences in Magarian's favor. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993).[1] During the Memorial Day weekend of 2000, Magarian, who was seventy-eight years old at the time, and his wife, both Florida citizens and residents, were visiting their son Dean and his family at their home in Vermont.   Hawkins, a Massachusetts citizen and resident,

---

[1]We are well aware of the summary judgment principles outlined in our numerous cases and find no need to recite them here. See, e.g., LeBlanc, 6 F.3d at 841-42 (outlining summary judgment paradigm).

and his fiancée, Dean's sister-in-law, also visited Dean's family that weekend, bringing along a 19.5 foot open-bow pleasure boat. On May 28, Magarian, Dean, Dean's son, and Hawkins towed the boat to Lake Saint Catherine in Vermont for a day of recreational boating.

After launching his boat into the water from a public ramp, Hawkins beached it on shore, with the bow resting on the sand and the stern remaining in the water, so that the boat was perpendicular to the shoreline. Hawkins did this because there were no public docking facilities for boarding on the lake.[2] Hawkins then jumped out of the boat.

Magarian, dressed in long pants, socks, and sneakers, approached the boat and asked Hawkins how he should get in, to which Hawkins responded, "grab the rail and pull yourself in." A railing ran along either side of the top of the bow back to about the midway point of the boat. However, the railings did not meet at the point of the bow, leaving a gap between the two rails. The record is not clear as to where on Magarian's body the railing was positioned at the time of the accident. At one point, Magarian testified that the bow was "around waist high, chest high, waist high," but when asked where the railing located on his body, he

_____

[2]While there is evidence that a dock was located nearby, that dock had "no trespassing" signs and was cordoned off with rope. Magarian does not claim that Hawkins should have ignored the "no trespassing" signs and used the dock.

responded that he did not know whether it was above or below his waist. In any event, without further question or discussion, Magarian grabbed the starboard side railing with his left hand and the port side with his right, and attempted to pull himself into the boat.[3] He suddenly fell forward into the boat, however, seriously injuring his eye, which ultimately had to be removed due to the severity of the injury. Magarian does not know why he fell so suddenly.

This was not Magarian's first time on a boat. He testified that, for a period of six years, he had been fishing once a week on a boat of similar size--between eighteen and twenty feet. On a couple of occasions, when the boat was brought onto shore with the bow resting on the sand, he boarded the boat by "walk[ing] out to the water about a foot or two and . . . just pull[ing] [himself] into the boat . . . ." According to Magarian, he never had trouble getting into the boat in this manner because he was not afraid of getting his feet wet. When asked at his deposition why he attempted to get into Hawkins's boat over the point of the bow, however, Magarian explained that he "had to do it the way [Hawkins] told [him] to do it," that he "took it for granted that [it] was the only way to get into the boat," and that "[i]t was the only way

---

[3]He indicated that he had intended to grab the railing from the point of the bow and to pull himself back toward the stern a little, then grab further back on the railing and pull himself further down, inching himself along until he could drop his legs into the boat.

to get in unless [he] got [his] feet wet."  He also testified that it might have been possible to get in by climbing over the side of the boat after taking off his sneakers and socks, and rolling up his pants, but that he "never gave it a thought" at the time.

## II

Under Massachusetts law,[4] Magarian must establish that Hawkins owed him a duty of care and that he breached that duty (the element of negligence), which actually and proximately caused his injury.  See Davis v. Westwood, 420 Mass. 739, 742-43 (1995); Bennett v. Eagle Brook County Store, Inc., 408 Mass. 355, 358-59 (1990).  The parties agree that Hawkins owed Magarian a duty to exercise that degree of care that a reasonably prudent boat owner/operator would exercise under similar circumstances.[5]  See Bennett, 408 Mass. at 358-59; Toubiana v. Priestly, 402 Mass. 84, 88 (1988).  Naturally, Magarian maintains that Hawkins breached

---

[4]The parties stipulated that Massachusetts law governs the dispute, and the district court likewise used that law to reach its result.  While a federal court sitting in diversity must apply the forum state's choice-of-law rules, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), the court may accept the parties' agreement as to the choice of law without independent analysis of the governing rules.  James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1245 (1st Cir. 1997) (citing Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991)).  We do so here.

[5]In his brief, Magarian seemed to argue that Hawkins might have owed him a higher degree of care, such as that owed by a common carrier.  At oral argument, however, he abjured that argument and agreed that Hawkins's duty was one to exercise that degree of care that a reasonably prudent boat owner/operator would exercise under similar circumstances.

that duty. Although the question of breach is ordinarily for the trier of fact, it may be appropriately withdrawn where the evidence and the reasonable inferences drawn therefrom lead to but one reasoned conclusion. Mullin v. Pine Manor College, 389 Mass. 47, 56 (1983); Leavitt v. Mizner, 404 Mass. 81, 88-92 (1989). Our review of the briefs and the record convinces us that this is such a case: a fair-minded jury could not reasonably conclude that Hawkins's conduct was unreasonable under the circumstances.

Magarian does not claim that instructing a passenger to board the boat by grabbing the bow railing and climbing in is itself an unreasonable practice in general, nor is there any evidence in the record suggesting that it is. Indeed, Hawkins's expert witness, Richard d'Entremont, a retired Coast Guard officer who based his opinion on his observations of recreational boating made over twenty-six years with the Coast Guard, opined that this is the ordinary and customary practice to board a boat. Cf. Corthell v. Great Atlantic & Pacific Tea Co., 291 Mass. 242, 243-44 (1935) (conformity to custom is evidence that supports an inference of reasonable care, but is not dispositive); but see Breault v. Ford Motor Co., 364 Mass. 352, 356 (1973) ("If one does what others do in like circumstances, the inference that he is conforming to the community standard of reasonable conduct may be so strong in particular circumstances as to establish the individual was not negligent."). Instead, Magarian claims that instructing him to

-6-

follow this practice was unreasonable under the circumstances solely because he was seventy-eight years old at the time. He conclusorily asserts that a reasonable boat owner would have recognized that a man in his seventies was physically incapable of grabbing the bow railing and climbing into the boat, and thus should have provided an alternative means to board the boat. We disagree.

The record evidence does not disclose that Hawkins had any indication that Magarian was physically unable to board the boat by grabbing the railing and climbing into the boat. Magarian was certainly the person in the best position to know his own physical capabilities, and he said nothing about his ability. In fact, he testified that, at the time of the accident, he felt physically able to get in from the bow without assistance, and that he never indicated to Hawkins that he preferred an alternative means to board the boat. Moreover, there is nothing in Hawkins's instruction--"grab the rail and pull yourself in"--indicating that Magarian was not to grab the railing further down toward the stern where the boat and railing were lower in relation to his body. Instead, without discussion, Magarian chose to grab the railing at the point of the bow and attempted to board the boat. We simply cannot find anything in the record that would allow a jury reasonably to conclude that Hawkins's conduct was unreasonable under the circumstances.

Magarian attempts to cast doubt on the reasonableness of Hawkins's conduct by alleging that safer alternative means of boarding the boat were available. First, he points out that the boat was equipped with a swim ladder bolted to the stern, and argues that Hawkins should have informed him of the ladder rather than instructing him to climb in over the railing. We are unconvinced. To begin, the evidence in the record does not suggest that this was the intended purpose of the swim ladder, or that using the swim ladder under the circumstances would have been safer. In any case, Magarian failed to adduce, in an affidavit or otherwise, any evidence supporting a reasonable inference that he would have used, or at least considered using, the swim ladder had he known of its presence. Indeed, insofar as the record supports any reasonable inference, it is that Magarian would not have used the swim ladder. Magarian was fully clothed, in long pants, socks, and sneakers; yet in order to reach the swim ladder, he would have had to wade in three to four feet of water, which was waist high or greater. He also testified that one of the reasons that he followed Hawkins's instructions was that "[i]t was the only way to get in unless [he] got [his] feet wet." It is not lost on us that Magarian had at least six years of boating experience and, on previous occasions, had entered over the side of a boat similarly positioned, yet on this occasion he chose to keep his feet dry by attempting to climb over the point of the bow.

Magarian also maintains that a genuine issue of material fact exists as to whether a reasonable boat owner would have provided equipment designed to assist passengers in boarding a boat beached in this particular fashion. He relies entirely upon his expert's report, which asserts in a conclusory and perfunctory manner that a reasonable boat owner would have considered, among other things, "devices available to assist the passenger in boarding the boat, and the cost to provide such devices." The report went on to state that "[t]hese devices include, but are not limited to, . . . a rope or other type of ladder that can be attached to the side or bow of the boat . . ., or any type of step that can be placed on the ground next to the boat . . . ." Finally, the expert stated that it was his opinion that Hawkins's "instructions and failure to provide . . . a safe means to board his boat was unreasonable and negligent . . . ."

Evidence showing either that other boat owners customarily use such devices or that such devices in fact exist may have called into question the reasonableness of instructing Magarian to climb in without their aid, but Magarian failed to provide such evidence. Beyond these speculative and conclusory remarks by Magarian's expert, there is no factual evidence disclosing that any device or equipment intended to assist passengers in boarding a beached boat exists, is commercially available, or is used by boat operators in general. Moreover,

-9-

there is no evidence that the devices described would have provided a safer means to board Hawkins's boat on the day in question. Essentially, we are invited to allow a jury to speculate whether a reasonable boat owner would have provided hypothetical devices or equipment to board Hawkins's boat, a course we decline to take.[6]

In the end, Magarian only has his expert's conclusory statement that Hawkins's instructions and failure to provide hypothetical equipment was unreasonable and negligent under the circumstances. But "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to defeat summary judgment. LeBlanc, 6 F.3d at 842. This principle applies with equal force to expert opinions. Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993) ("Where an expert presents 'nothing but conclusions--no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment.") (internal quotation marks and citations omitted). In other words, an "expert opinion must be more than a conclusory assertion about ultimate legal issues." Id.

---

[6]Our holding is, of course, limited to the facts of this case. We offer no opinion as to whether a different result would attach had Magarian adduced evidence showing the existence of such equipment. Cf. The T.J. Hooper, 60 F.2d 737, 740 (2d Cir. 1932) (L. Hand, J.) ("A whole calling may have unduly lagged in the adoption of new and available devices.").

Given that Magarian failed to adduce sufficient evidence supporting a reasonable inference that Hawkins breached his duty of care under the circumstances, **we affirm.** Costs to appellee.